## CONKLIN vs. THE PHŒNIX MILLS OF SENECA FALLS.

The towing-path on our canals, being a public highway for all boatmen using the canals, the right of a boatman to travel with his team, thereon, is at least equal to that of a traveler upon a public highway. And in cases of damages sustained by him while so traveling, through the negligence of others, the same rule is applicable which governs in respect to acts done upon a public highway, which render traveling there unsafe.

And in reference to highways, the general doctrine is, that any act of an individual, done to a highway, though performed on his own soil, if it detracts from the safety of travelers, is a nuisance.

The defendant's factory stood close to the towing-path upon a canal, on the defendant's own land, and a pipe, used to conduct and carry off the dirt and dust from the wool, and other refuse matter from the machine, outside the building, was connected with a wool-picker inside, which was operated by a blower. The pipe was passed out through a window in the factory, some two feet above the surface of the towing-path. It did not extend over the path, nor beyond the defendant's premises. The plaintiff's mules, while engaged in towing a boat upon the canal, became frightened by a current of air and dust coming through the pipe across the path, and jumped into the canal and were drowned.

*Held*, 1. That the defendant had neither a statutory, nor a common law, right, to eject a stream of air and dust upon the towing-path, to the prejudice of those rightfully passing thereon.

2. That it was a question for the jury to determine, upon the evidence before them, whether such act of the defendant rendered the use of the towing-path hazardous, and caused the injury in question. That if it did, the act was wrongful, and the defendant was liable.

3. That it was erroneous for the judge to instruct the jury that the defendant owed no duty to the plaintiff, upon which an action would lie for negligence on its part, and that what was shown to have been done by the defendant—assuming that it caused the injury—was not a public nuisance.

In those cases where the acts done are not deemed in law to be nuisances, no action will lie, by the party injured, unless there is an abuse of the right, or some irregularity in the manner of exercising it.

MOTION for a new trial, by the plaintiff, on case and exceptions, directed to be heard at general term.

The action was brought to recover the value of a span of mules, belonging to the plaintiff, alleged to have been drowned, in consequence of, and by the wrongful act of the defendant. The defendant is a corporation, owning and operating a woolen factory in Seneca Falls. Its

mill is situate on the south or southeast side of the Seneca canal, and the walls of its building extend to the south line of the tow-path on said canal, at which place the tow-path is less than 14 feet wide. On the north side of the defendant's building, adjoining the line of the tow-path, a duct or spout extended to the north side of the walls of the said building, which spout or duct is, in some way, connected with the machinery in the defendant's mill, so as to blow out the dust and other matter on to, and across the tow-path, with considerable violence, and with a whizzing noise. The plaintiff was a boatman, running a boat on said canal, towed by the mules in question. On the 16th day of July, 1868, the plaintiff, with his boat and mules, was coming from the east, going west on said canal. After passing the defendant's mill a short distance, the mules were unhitched from the boat, for the purpose of feeding and enabling the plaintiff to pass his boat to the north side of the canal. The mules were in charge of the driver, who, by the direction of the plaintiff, started to take them back a short distance east of the defendant's mill, to the place where the teams used on the canal were usually fed. Just as the driver got opposite the defendant's mill, and opposite the said spout or duct connected with said machinery on the tow-path, the machinery in the defendant's mill, connected with said spout or duct, was started in motion, blowing out dust and fragments of wool and other material against said mules, at which they became frightened and jumped into the canal or river, and were drowned.

The action was tried at the circuit in Seneca county, before a justice of this court and a jury. At the close of the plaintiff's evidence, the defendant's counsel moved for a nonsuit, on the following grounds :

"1st. On the ground that the evidence fails to show any negligence on the part of the defendant.

2d. That the evidence shows that the defendant was in

Conklin *v.* Phœnix Mills of Seneca Falls.

the occupation of its own premises, pursuing its ordinary business in the usual and ordinary way, and passers by, under such circumstances, must take all the risks incident to a lawful business.

3d. On the ground that the plaintiff's team were wrongfully on the towing-path, opposite the premises of the defendant, they being driven on the towing-path, and not being engaged, in any way, in transporting freight on the canal.

4th. On the ground that the evidence shows that the negligence of the plaintiff contributed to the injury complained of."

The court denied the motion. At the close of the testimony it was renewed, and again denied.

His honor, the judge, stated to the jury that he had come to the conclusion that the plaintiff could not recover. That there was no relation between him and the defendant, that involved or implied any duty upon which an action for negligence would lie; and he directed the jury to find a verdict for the defendant; and they found accordingly. The counsel for the plaintiff duly excepted to the charge of the court, and the instructions to the jury to find a verdict for the defendant. Leave was obtained to make a case and exceptions, which were directed to be heard, in the first instance, at general term.

*D. B. Prosser*, for the plaintiff.

I. The charge and instruction of the court, and the direction to the jury to find a verdict for the defendant, were erroneous, and a new trial should be granted, with costs to abide the event, because: The tow-path was a public highway for all persons to use who were navigating the canal. It belonged to the State, for the use of persons navigating the canal. The defendant has no right or interest in the tow-path, or any right to use the same for any purpose whatever. It had no right to do or suffer

anything to be done which, in any way or manner, would interfere with the free and uninterrupted use thereof, by those. having a lawful right to the use thereof. It is a mistake to suppose that the defendant owed no duty to the plaintiff. It was the duty of the defendant to construct and operate its mill in such a way, and so as not to interfere with the rights of the plaintiff and others similarly situated, in the safe, free, and uninterrupted use of the canal and tow-path. It was bound so to construct and operate its factory as not to jeopardize the rights and property of others; and by constructing and operating its machinery so as to render the use of the tow-path difficult or hazardous, it was guilty of a wrong, and is liable for all the consequences resulting from such wrong. (*Newson* v. *The N. Y. Central R. R.*, 29 *N. Y.* 383. *Hay* v. *The Cohoes Company*, 2 *id.* 159. *Teall* v. *Barton et al.*, 40 *Barb.* 137. *McCamus* v. *The Citizens' Gas Light Co. of Brooklyn*, *Id.* 380.) The evidence shows that other teams, using the tow-path, had been and were frightened by this spout or duct of the defendant.

II. If, under any conceivable view, the jury would have been warranted in finding a verdict in favor of the plaintiff, the instruction of the court to the jury to find for the defendant was erroneous, and a new trial should be ordered. It is therefore submitted, that unless the defendant had a legal right to so construct the factory and machinery as to discharge and blow the dust, fragments of wool, and other material, on to and across the tow-path, in such a manner as to frighten the teams used in towing upon the canal, and render it hazardous so to do, the instruction was wrong, and a new trial should be ordered.

There was nothing in the evidence which tends, in the least, to show that the defendant had any right to blow the dust and other materials on to and across said tow-path. (*Conklin* v. *Thompson*, 29 *Barb.* 218.)

*Miller & Hawley,* for the defendant.

I. The rulings upon questions of evidence on the trial, to which the plaintiff excepted, were proper, as well as the exclusion of evidence of remote and speculative damages from detention, inconvenience, &c., offered under the second count in the complaint. None of the evidence thus offered and excluded, tends to obviate the difficulty in the plaintiff's case which defeats his recovery.

II. The court should have granted the motions for nonsuit, for the reasons there given. 1. The evidence failed to show any negligence on the part of the defendant. 2. The defendant was in the occupation of its own premises, pursuing its ordinary business, in the usual and ordinary way, and passers by, under such circumstances, must take all the risks incident to a lawful business. 3. The plaintiff's team was wrongfully on the towing-path opposite the premises of the defendant, they being driven on the towing-path, and not being engaged in any way in transporting freight on the canal. 4. The negligence of the plaintiff contributed to the injury complained of.

III. The negligence of the plaintiff was sufficient to bar his recovery. The mules were lost through a carelessness on the part of the plaintiff, so conspicuous as to be almost willful. 1. They were being driven on the tow-path, unhitched, by a mere boy, who held the lines. 2. He made no effort to rescue them, but abandoned them and went after the plaintiff, who was upon the other side of the basin with the boat, and so far away that he did not get there till they were drowned. 3. The plaintiff seeing the mules in the river, directed the persons present to take them " back to the end of the square docking to the slope wharf," but others, among them an employee of the defendant, "proposed taking them out to the cut or sluice made on purpose to get teams out." 4. The instructions of the plaintiff were followed by the man who had hold of the mules. It was Dennis who had hold of them with

the pike poles. It was to Dennis in particular that the plaintiff gave directions to take them up to the slope wall. Dennis was remonstrated with by William Law, who was an employee of the defendant, against taking them up the slope wall; the planks at the place prepared for getting out horses were got in readiness, and he was asked to take them out there; he said, "No, he would let them get up the sloping bank," and was told "if they get up there they will be drowned," and responded with an oath, that "it was none of their business." And this direction of the plaintiff, and the following of it, caused the drowning of the mules.

IV. The plaintiff's mules were unlawfully on the tow-path. "Every person who shall  *  *  drive any horse, ox, ass, mule, or other cattle upon the towing-path of the canal  *  *  shall, for each offense, forfeit the sum of five dollars. But this section shall not be construed to extend to persons towing boats." (1 *R. S.* 633, § 320, *5th ed.*) The plaintiff was not towing a boat, nor were his mules attached to any. They were being driven back over the tow-path; and if it was lawful to so drive them a short distance, it would be for any distance. They were clearly within the prohibition of the statute. No custom—not even a license to do this, will place the plaintiff in a position to maintain his action. The statute cannot be repealed in that way. (*Opinion of Grover, J., in Nicholson* v. *Erie R. R., in Court of Appeals, Jan.* 1870.)

V. The defendant was engaged in a lawful business, conducted in a lawful manner, and upon its own premises. 1. The machine was wholly within the building of the defendant. 2. The dust coming from it was not carried by the force of the machine beyond the defendant's premises. The dust dropped inside, so that in cold weather the window was kept in, in front of the pipe. The dust was deposited by the machine on the defendant's premises. If carried farther, it was by the wind or external causes.

Conklin *v.* Phœnix Mills of Seneca Falls.

3. Nothing but dust—the finest particles—was discharged. The construction of the machine, which was shown, and undisputed, renders this a certainty, and the contradictory and loose statements "that the stuff blown off looked like wool;" "the blower was blowing off steam;" "it was cotton or something;" "dust, like, came out;" all from the same witness, raise no issue. 4. It is like the case of a train of cars passing along its track adjoining a highway, and the smoke of the engine being carried by the wind in front of a team upon the highway, thereby frightening them and causing them to run and injure themselves. Or the smoke from a chimney, blown down by a sudden gust of wind, and resulting the same way. Here, clearly, no action lies. 5. Indeed, the owner of property has always the right to use it for a lawful business, and passers by must take the risk of dust and noise, and other dangerous incidents to the business. (*Howland* v. *Vincent*, 10 *Metc.* 371. *Moshier* v. *Utica and Schenectady R. R.*, 8 *Barb.* 427. *Coy* v. *Utica and Schenectady, R. R.* 23 *id.* 643.) In *Howland* v. *Vincent*, the owner of land made an excavation therein within one or two feet of a public street, and used no precautions against danger of falling into it. A passer by, in the night, and free from negligence, fell into the excavation and was injured. It was held that she could maintain no action against the owner of the land. The injury was not immediate; as from a careless use of fire, or the firing of a gun. Even if the defendant had before permitted people to go there, so that a license existed, it made no difference; no liability can be based upon a mere license. The defendant did a lawful act on his own premises. It was not a public nuisance, and he was, therefore, not liable. In *Moshier* v. *Utica and Schenectady Railroad*, (1850,) where a horse, while being led along the highway, was so frightened by an engine and train of cars rapidly passing along a railroad near by, that he burst a blood vessel and died; held that no action

would lie against the railroad company for the injury.   But in that case it was found that the railroad company owned the turnpike, and had neglected to repair, &c., and had encroached thereon, and it was held liable for that reason. In the subsequent case of *Coy* v. *Utica and Schenectady Railroad,* which was a similar accident, at the same place, it was held, in 1855, that the railroad was not liable,. and the former decision in Moshier's case was overruled.   In both cases it was held that the railroad company was not bound to fence or erect guards or screens between the turnpike and their railway.   That theirs was a lawful business, and noise, smoke, dust, &c., were its natural and necessary incidents; and that travelers passing along the adjoining public highway, whether owned or not owned by the railroad company, must take the risk of these incidents. The two cases together cover the whole question at bar. In those cases the plaintiff had a license to be where he was; he was rightfully traveling on the public highway.   In the first case, the defendant was held liable only because it owned the highway and had encroached upon it in violation of the provisions of its charter; in the last case this doctrine was overruled; and it was held that, inasmuch as the defendant had a right to construct its road where it was located, it was not liable.   The principle of these decisions is, though stated in different phraseology, the same as that enunciated by the learned justice in his direction to the jury in the present case.   The relations of the plaintiff and defendant were not such as to imply any duty which the defendant owed to the plaintiff.

VI.  " There were no relations between the plaintiff and defendant that involve or imply any duty upon which an action for negligence lies."   " The only ground upon which the action can be maintained is, that the defendant maintained a public nuisance;" of that there is neither allegation nor proof. (*Nicholson* v. *Erie Railway,* 41 *N. Y.* 525, *and cases cited in the opinions.*)   1. The plaintiff offered no

proof that the machinery was a public nuisance. If he had, it was inadmissible for want of any such allegation in the complaint. The proof is complete and conclusive against it; from 1200 to 1800 teams per month, have for years safely passed the place. 2. This point, which is the charge of the learned justice at the circuit, is clearly within the authority of the cases cited. In an action of negligence it is incumbent on the plaintiff to point out some duty which the defendant owed to him. The case of *Nicholson* v. *The Erie Railway,* twice argued in the Court of Appeals, is, and was regarded by the learned justice, decisive of the case at bar. In that case, Nicholson, crossing the defendant's track, by a way over which he had a license to go, was killed by the defendant's cars which had been standing with unlocked brakes, and were set in motion by the wind. His administrator brought suit, under the statute. So, here, (considering the case in the most favorable light for the plaintiff,) the plaintiff's mules were passing the defendant's premises and were frightened by substances blown across their path, which could not have reached them had there been a screen or cap over the pipe. There, as well as here, the plaintiff had a mere license to pass. There, the omission to fasten the brakes was held to give no right of action. Here, the omission to place a cap or screen before the pipe gives none. Indeed, all through the cases the analogy is perfect.

VII. "Negligence consists in the commission of some lawful act in a careless manner, or in the omission to perform some legal duty to the injury of another. It is essential, to a recovery in the latter case, to establish that the defendant owed, at the time, some specific, clear legal duty to the party injured." (*Nicholson* v. *Erie Railway, supra.*) 1. There is not the slightest proof nor claim "that a lawful act was here committed in a careless manner." The machinery was of the usual kind, operated in the usual manner, as it had been for years in that very

place. 2. There was, at the time, no "specific, clear legal duty," which the defendant owed to the plaintiff. If there was, what was that duty? Like the cars on the track in Nicholson's case, this machine was "where the defendant had a clear legal right to place and keep it. It was placed there for a lawful purpose, and in the proper discharge of the defendant's usual and ordinary business." 3. But when the fact is considered that the plaintiff's mules were upon the tow-path, unlawfully, in violation of the statute, it is too clear to need argument that he could not recover.

*By the Court*, JOHNSON, J. The exception by the plaintiff's counsel to the charge and direction of the court, to render a verdict for the defendant, is well taken. This direction was given after the counsel on each side had summed up the cause to the jury. It was clearly a case for the jury to determine, upon all the evidence. The court held that the defendant owed no duty to the plaintiff, upon which an action would lie for negligence on its part, and that what was shown to have been done by the defendant, assuming that it caused the injury, was not a public nuisance.

In this, I think, the learned judge mistook the law. The plaintiff had the right to be there with his team. He was a boatman on the canal, and his right to travel with his team upon the towing-path, was at least equal to that of a traveler, upon a public highway. The towing-path on our canals, is a public highway, for all boatmen using the canals, as the plaintiff was on this occasion. The State provided it for that purpose, and various statutes have been passed and regulations adopted, for the purpose of securing its unimpeded and safe use, to boatmen and others lawfully using or employed upon the canals. The same rule is applicable in cases of this kind, which governs in respect to acts done upon a public highway, which render traveling there unsafe. The plaintiff, and

all others similarly situtated, have the same right of passage over this way, without exposure to acts from third persons, which render such passage dangerous, that ordinary travelers have upon public highways.

The general doctrine upon this subject is, that " any act of an individual done to a highway, though performed on his own soil, if it detract from the safety of travelers, is a nuisance." (*Hart* v. *Mayor &c. of Albany, per Edmonds, Senator,* 9 *Wend.* 607. *Dygert* v. *Schenck,* 23 *id. per Cowen, J.,* 447. 1 *Wait's Law and Prac.* 749, 750.) This case is quite analogous to that of *Conklin* v. *Thompson,* (29 *Barb.* 218,) where the plaintiff's horse was frightened, and was injured and died, in consequence of the explosion of a fire cracker in the street, when the plaintiff and horse were passing. The general doctrine laid down by the court in that case is quite in point here. (*See also, Congreve* v. *Smith,* (18 *N Y.* at *p.* 82.) The evidence in the case tended very strongly to show that the plaintiff's mules became frightened, and jumped into the canal and were drowned, by reason of a strong current of air coming from a pipe projecting from the defendant's mills, filled with dust and pieces of wool which blew directly upon, and across the towing-path, and hit the mules as they were passing. The defendant's factory stood in close proximity to the towing-path, upon the defendant's own ground, and the pipe was connected with a wool picker inside, which was operated by a blower, and the pipe was used to conduct and carry off the dirt and dust from the wool, and other refuse matter from the machine outside the building. Occasionally, and quite frequently, as the evidence tends to show, shreds and fibres, and locks of wool were thus carried off. The pipe was passed out through a window in the factory, some two feet above the surface of the towing-path. It did not reach over upon the path, nor beyond the defendant's premises, but the current of air issuing from it, filled as before described,

when the machine was in operation, was of such force as to drive the dust and other matter clear across the path, into the canal on the other side. There was much other testimony showing, or tending to show, that other teams had been frightened there before, from the same cause, and that one other animal had jumped into the canal in consequence, as the plaintiff's animals did.

The act of ejecting this current of air and material upon and across the towing-path, is of the same character, precisely, as would be the act of exhausting steam from an engine, stationed in proximity to a highway, upon and across such highway, where travelers were passing with their teams. The latter act would, perhaps, be more obviously dangerous, but the difference is of degree only. It appears from the evidence that, since the accident in question, the defendant has put an elbow upon this pipe, so as to conduct the current of air and dust below and under the mill, and away from the towing-path.

It was clearly a question for the jury to determine, upon all the evidence before them, whether this practice of the defendant rendered the use of the towing-path hazardous, and caused the injury in question. If it did, the act was wrongful and the defendant is liable. The wrong consisted, not in using the machine and pipe by the defendant upon its own premises, but in invading the way with the current of air and dust, to the prejudice of those rightfully passing thereon. The case of *Nicholson* v. *Erie Railway,* (41 *N. Y.* 525,) relied upon by the defendant's counsel, has no application to the case before us. In that case the plaintiff's intestate was killed upon the defendant's premises, and by reason, in part, of his own contributory negligence. The cases of *Moshier* v. *The Utica and Schenectady R. R. Co.,* (8 *Barb.* 427;) *Coy* v. *The Utica and Schenectady R. R. Co.,* (23 *id.* 643;) and *Williams* v. *N. Y. Central R. R. Co.,* (18 *id.* 222,) are cases where the defendant had the right secured by statute to do the acts complained of. In all

that class of cases, the acts so done are not deemed in law to be nuisances, and no action will lie, unless there is an abuse of the right, or some irregularity in the manner of exercising it. Here, the defendant had neither a statutory nor a common law right to eject a stream of air and dust upon the towing-path.

Whether there was any negligence on the part of the plaintiff, in not saving his animals after they were in the canal, was a question for the jury in fixing the measure of damages.

A new trial must, therefore, be ordered; with costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Oswego, May 7, 1872. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]